UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CASE NO.: 0:21-cv-61336-AHS**

BRANDON THOMPSON, *on behalf of himself and other similarly situated,*

      Plaintiff,

v.

UNIVERSAL CREDIT SERVICES, INC.,

      Defendant.
_____/

**DEFENDANT, UNIVERSAL CREDIT SERVICES, INC.'S MOTION TO DISMISS FOR LACK OF JURISDICTION WITH INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW, Defendant, Universal Credit Services, Inc. ("UCS"), by and through its undersigned counsel, hereby files this its Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and in support thereof, would states as follows:

**I.   Nature of the Action**

Plaintiff, Brandon Thompson, by and through his undersigned counsel, seeks statutory damages on behalf of the Plaintiff, and similarly situated individuals of a defined class under the provisions of the Fair Debt Collection Practices Act. ("FDCPA") Particularly, Plaintiff seeks to duplicate the results of the recent Eleventh Circuit's April 21, 2021, decision in *Hunstein v. Preferred Collection & Management Services*, 994 F.3d 1341 (11th Cir. 2021), which held that a debtor's conveyance of debtor information to a third-party letter vendor was an unauthorized debt collection communication in violation of 15 U.S.C. Section 1692c(b). While the *Hunstein* matter remains on appeal, the United States Supreme Court issued its decision in *TransUnion, LLC v.*

1

*Ramirez*, 210 L. Ed. 2d 568 *; 2021 U.S. LEXIS 3401 **; 141 S. Ct. 2190; 28 Fla. L. Weekly Fed. S 1005; 2021 WL 2599472 (2021), on June 25, 2021. The recent *Ramirez* case has cast serious doubt upon whether the similar plaintiffs can maintain and demonstrate Article III standing in "*Hunstein*" type lawsuits, either on an individual basis, but more problematic on a class-wide basis. As such, Defendant seeks an order finding that Plaintiff and any alleged class of similar individuals have not demonstrated Article III standing in this "*Hunstein*" related matter.  Defendant asserts that Plaintiff does not have standing to pursue this claim for the following reasons.

**II.     Motion to Dismiss/Article III Standing**

The Eleventh Circuit in *Kennedy v. Floridan Hotel, Inc.*, 998 F.3d 1221 (11th Cir. 2021) held that "Under Article III of the Constitution, our jurisdiction is limited to "cases" and "controversies." U.S. Const. art. III, § 2; *Christian Coal. of Fla., Inc. v. United States,* 662 F.3d 1182, 1189 (11th Cir. 2011). The standing doctrine "stems directly from Article III's 'case or controversy' requirement" and "implicates our subject matter jurisdiction." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quotation marks omitted).  To establish standing under Article III, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the defendant's actions; and (3) that "the injury will be redressed by a favorable decision." *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). An injury-in-fact is the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S. Ct. at 2136 (quotation marks and citations omitted). Less than one month later, the United States Supreme Court in *Ramirez* echoed the Eleventh Circuit's position but provided clarity as to the parameters of what constitutes "injury-in-fact" and the level of requisite "concrete harm"

necessary to maintain and assert Article III standing.

     Justice Kavanaugh, writing for the majority, stated that "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm."  Citing *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340-341, 136 S. Ct. 1540, 194 L. Ed. 2d 635. The "law of Art. III standing is built on a single basic idea—the idea of separation of powers." *Raines v. Byrd*, 521 U. S. 811, 820, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) (internal quotation marks omitted). Separation of powers "was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787." *INS v. Chadha*, 462 U. S. 919, 946, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983) (internal quotation marks omitted). Therefore, we start with the text of the Constitution. Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake'" in the case—in other words, standing. *Raines, 521 U. S., at 819, 117 S. Ct. 2312, 138 L. Ed. 2d 849*. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: "'What's it to you?'" Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983). To answer that question in a way sufficient to establish standing, a plaintiff must show (i) that he suffered an injury-in-fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan,* 504 U. S. at 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). If "the plaintiff does not claim

3

to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Avenue Assocs., Inc.*, 926 F. 3d 329, 333 (7th Cir. 2019) (Barrett, J.).

Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only "the rights of individuals," *Marbury v. Madison,* 5 U.S. 137, 1 Cranch 137, 170, 2 L. Ed. 60 (1803), and that federal courts exercise "their proper function in a limited and separated government," John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1224 (1993). Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question.

In sum, under Article III, a federal court may resolve only "a real controversy with real impact on real persons." *American Legion v. American Humanist Assn.*, 588 U. S. ___, ___, 139 S. Ct. 2067, 204 L. Ed. 2d 452, 491 (2019) (Gorsuch, J., concurring in judgment). The question in this case focuses on the Article III requirement that the plaintiff's injury in fact be "concrete"—that is, "real, and not abstract." See: *Spokeo, Inc., ,* 578 U. S. at 340, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (internal quotation marks omitted); see *Susan B. Anthony List v. Driehaus,* 573 U. S. 149, 158, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014); *Summers v. Earth Island Institute,* 555 U. S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); *Lujan,* 504 U. S., at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351; *Schlesinger v. Reservists Comm. to Stop the War*, 418 U. S. 208, 220-221, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974). As a general matter, the Court has explained that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Sprint Communications Co. v. APCC Services, Inc.*, 554 U. S. 269, 274, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008); see also *Steel Co. v. Citizens for Better Environment,* 523 U. S.

83, 102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing. See *Lujan,* 504 U. S. at 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Every class member must have Article III standing to recover individual damages. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo,* 577 U. S. 442, 466, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) (Roberts, C. J., concurring).[1] Plaintiffs must maintain their personal interests in the dispute at all stages of litigation. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U. S., at 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351. Therefore, in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing "must be supported adequately by the evidence adduced at trial." *Ibid.* (internal quotation marks omitted). And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages). *Davis*, 554 U. S., at 734, 128 S. Ct. 2759, 171 L. Ed. 2d 737.

### III.     *Hunstein* and the future of Letter Vendor Cases after *TransUnion*

Following the *Hunstein* opinion, the federal courts have been flooded with similar "copy-cat" lawsuits seeking to cash in on this FDCPA matter of first impression within our Circuit and

---

[1] While the Supreme Court in *TransUnion* did not specifically address whether every class member must demonstrate standing *before* a court certifies a class, the Defendant contends that the numerosity element of Rule 23 warrants the Plaintiff to adequately demonstrate that a sufficient collective of individuals have a viable "concrete harm or injury" to certify a class and support Article III jurisdiction for that class.

nationwide. The current *Hunstein* appeal is awaiting a ruling on the debt collector's Petition for Rehearing *en banc.* Meanwhile, other federal district courts grow frustrated with the influx of similar lawsuits. In the Eastern District of New York, Judge Brown stated:

> Legions of FDCPA cases that have little to do with the purposes of the statute have appeared on this Court's docket. "As my colleagues in the Eastern District of New York have observed [in confronting] lawyers [who] have attempted to apply [the FDCPA] in ways Congress never imagined or intended, 'remedial laws can themselves be abused and perverted into money-making vehicles for individuals and lawyers.'" *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 U.S. Dist. LEXIS 217024, 2020 WL 6809059, at *6 (S.D.N.Y. Nov. 19, 2020) (quoting *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012)) (collecting cases). Judge Cogan in *Saunders*, in turn, raised a "serious concern that this lawsuit reflects an attempt by plaintiff and/or his attorney to manipulate the law for an improper purpose," to wit: "whether plaintiff deliberately misled NCO for the purpose of creating a claim against it under the FDCPA and the TCPA that could be settled for nuisance value plus attorneys' fees." *Saunders,* 910 F. Supp. 2d at 471 (ordering *Rule 11* hearing).
>
> *In re FDCPA Mailing Vendor Cases*, 2021 U.S. Dist. LEXIS139848 (E.D.N.Y. July 23, 2021).

Judge Brown then turned to how the recent *TransUnion* case now impacts *Hunstein* related cases. The court noted, "[o]ther district courts have recognized the effect of *TransUnion* on certain FDCPA cases. In *Kale v. Procollect, Inc.,* No. 2:20-CV-2776, 2021 U.S. Dist. LEXIS 124283, 2021 WL 2784556, at *3-4 (W.D. Tenn. July 2, 2021), the district court dismissed an FDCPA class action, finding that the named plaintiff lacked standing because the complaint only "alleged procedural violations of the FDCPA." In reaching this determination, the court held that, in *TransUnion*, the Supreme Court recognized that "risk-of-harm analysis applies only in suits seeking injunctive relief and cannot be used to establish standing in a suit for damages." *Id.* Similarly, in *Van Hoven v. Buckles & Buckles, P.L.C.,* No. 1:14-CV-60, 2021 U.S. Dist. LEXIS 129563, 2021 WL 2947593, at *4 (W.D. Mich. July 1, 2021), the district court found dismissal

6

under the bona fide error defense "especially fitting" in light of *TransUnion* because "[t]here is no injury to Plaintiff, here, in just having the failed garnishment cost on the defendants' books[.]" Since "[t]he $15 failed garnishment cost was never collected at all," under *TransUnion*, "plaintiff may not have standing to proceed in any event." *Id.*

While the court recognized the *Hunstein* opinion of the Eleventh Circuit, the district court stated, "[m]oreover, the Supreme Court's decision in *TransUnion* casts significant doubt on the continued viability of *Hunstein*." The Court then proceeded with a two-part Article III standing analysis on how the *TransUnion* opinion nullifies the impact of *Hunstein*.

First, in *TransUnion*, the Supreme Court held that the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *141 S. Ct. at 2210*. In reaching this determination, which certainly presents a hurdle to the mailing vendor theory advanced in *Hunstein*, the Court observed:

> . . . the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is . . . unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications.

*Id. at 2210 n.6* (citations omitted).

The district court concluded, "[w]hile *dicta*, this language appears dispositive of the mailing vendor theory." *Id.*

Second, *TransUnion* emphasizes that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id. at 2210-11*; *see also Fifth Ave. Peace Parade Comm. v. Gray,* 480 F.2d 326, 332 (2d Cir. 1973) (rejecting "mere speculative apprehension of

7

future misuse of information" as grounds for standing). Even to consider the risk of future harm, the Supreme Court found that the plaintiffs had to demonstrate that "their individual credit information would be requested by third-party businesses and provided by TransUnion during the relevant time period . . . [or] that there was a sufficient likelihood that TransUnion would otherwise intentionally or accidentally release their information to third parties." *TransUnion, 141 S. Ct. at 2212*.

## IV. Defendant's Motion to Dismiss

The district court ultimately concluded that "*[n]one of the plaintiffs have sufficiently alleged a concrete and particularized injury-in-fact sufficient to satisfy Article III standing. As such, the Court lacks jurisdiction over these claims, and the cases are dismissed." Id.* Defendant asserts that a similar ruling is warranted here. While Judge Newsom's decision in *Hunstein* distinguished *Trichell v. Midland Credit Management*, 964 F.3d 990 (11th Cir. 2020), to find Article III standing in the letter vendor context, the Eleventh Circuit's panel did not have the binding guidance of the *TransUnion* opinion issued one month later. Now that the district courts within this Circuit have the benefit of the binding precedent articulated by the United States Supreme Court in *TransUnion*, Defendant requests this Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2]

---

[2] "The Supreme Court, by accepting cases through the discretionary writ of certiorari, has kept order within the courts. The notion that the federal district courts and circuit courts of appeal must adhere to controlling Supreme Court decisions is reinforced whenever necessary. In *Hutto v. Davis*, 454 U.S. 370, 375, 102 S. Ct. 703, 706, 70 L. Ed. 2d 556 (1982), the Court emphasized the need to adhere to the hierarchal structure of the federal court system created by the Constitution and Congress. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Davis*, 454 U.S. at 375, 102 S. Ct. at 706." See: *Litman v. Massachusetts Mutual Life Insurance Co.*, 825 F.2d 1506 (11th Cir. 1987).

**WHEREFORE,** Defendant, United Collection Service, Inc. ("UCS"), requests that this Court dismiss Plaintiff's Complaint at Plaintiff's cost and awarding reasonable attorneys' fees and costs as provided for under applicable law.

Dated this **10th day of August 2021.**

Respectfully submitted,

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
skohlmyer@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Telephone (407) 622-1772
Facsimile (407) 622-1884
*Attorneys for Defendant, United Collection Service, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY that a copy of the foregoing has been electronically filed on **August 10, 2021**, with the Clerk of the Court by using the electronic filing system. I further certify that the foregoing has been sent via electronic transmission to the following: James L. Davidson, Esquire of Greenwald, Davidson & Radbil, PLLC, at *jdavidson@gdrlawfirm.com*, Matisyahu H. Abarbanel, Esquire and Matthew Bavaro, Esquire of Loan Lawyers at *Matis@fight13.com* and *Matthew@fight13.com* (*Attorneys for Plaintiff*).

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
skohlmyer@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Telephone (407) 622-1772
Facsimile (407) 622-1884
*Attorneys for Defendant*